CITY OF GALESBURG *v.* GALESBURG WATER CO. *et al.*

(*Circuit Court, N. D. Illinois.* March 20, 1888.

MUNICIPAL CORPORATIONS—CONTRACTS—RESCISSION—ESTOPPEL BY RESOLUTION OF CITY COUNCIL.

A city that has granted a party the right, for a specified time, to erect water-works, and supply the city with water for public and private use, is not estopped by a resolution of the city council, reciting that the water-works stood the test required by the ordinance, from maintaining an action to rescind the contract, the works proving inadequate, against a corporation to whom the contract had been assigned, and holders of bonds issued by such corporation, who had purchased subsequent to the passage of the resolution. The bond-holders, however, are entitled to a fair remuneration for the water actually furnished and consumed.

In Equity. .

Action by the city of Galesburg against the Galesburg Water Company to have a contract for a water supply set aside as fraudulent and unfulfilled. The action was brought in the state court. On application of the Farmers' Loan & Trust Company of New York, the assignees under a trust deed of the water company, they were made parties defendant, and the suit was removed to this court.

*Fletcher Carney* and *F. A. Willoughby*, for complainant.

*Turner, McClure & Rolston* and *Arthur Ryerson*, for defendant.

GRESHAM, J., (*orally.*) By an ordinance passed on the 12th of May, 1883, the city of Galesburg granted to Nathan Shelton the right to construct and maintain, within and near the city, water-works to supply both public and private wants, for a term of 30 years; the yearly rental for fire hydrants being specified in the ordinance. This ordinance was accepted by Shelton. At and previous to this time, the city had ' maintained an imperfect system of water-works, and the old-mains were sold to Shelton at a price to be ascertained in the future, and paid for in water-rents. Shelton caused the Galesburg Water-Works Company to be organized, and assigned to it his contract with the city. In August, 1883, the Water Company, by its trust deed, conveyed to the Farmers' Loan & Trust Company of New York its property acquired and to be acquired to secure the payment of an issue of bonds amounting to $121,000. The Water Company proceeded to erect the works and lay down additional mains, and on December 6, 1883, the city was notified that the works had been completed, and that the Water Company was ready for the test called for by the ordinance; and on the same day, the members of the common council being present, such test was satisfactorily made, as appears from an ordinance of the common council. A few months later complaints were made both as to the character and quantity of the water. In the summer or fall of 1884 the Water Company admitted its failure to supply water according to the terms of the contract, and further time was given it to sink gang-wells, which it was thought would secure an abundant supply. After sinking such wells, the Water Company claimed that it was able to fulfill the contract; but it failed and refused on request to demonstrate its ability to do so by a proper test of its works; and the proof shows that this claim was unfounded. On the 1st of June, 1885, the city, by an ordinance, rescinded the contract with Shelton, and by its officers repossessed itself of its old water-mains for use and protection from fire, and brought this suit in the state court at Galesburg to set aside the contract for fraud and non-compliance on the part of the Water Company. The ordinance granting the franchise to Shelton required him to furnish pure water of a maximum quantity, and provided that the city should not be liable for hydrant rents for such time as the works did not supply the required amount of water. The city paid no hydrant rents to the Water Company. Shelton obligated himself to construct a system of works which would enable him to furnish a supply of water for the use of the inhabitants, also for the use of city build-

ings, public schools, churches, drinking fountains, and for fire purposes. The evidence conclusively shows that the Water Company failed to comply with its contract, although a reasonable time was afforded it to do so; that the water furnished was impure and insufficient in quantity; that it was drawn, in part, from a creek or swamp, which was polluted by the drainage from slaughter-houses, and by night-soil and dead animals dumped into it by scavengers. The Water Company thus trifled with the health and the lives of the people. It is not contended, I think, that Shelton or his successor, the Water Company, complied with the contract. On the application of the Farmers' Loan & Trust Company it was made a party defendant, and on its motion the suit was removed to this court, and the purchasers at the sale in the foreclosure suit brought by the trustee against the Water Company, and who were substituted for the trustee, now urge that the city, by adopting the resolution of December 6, 1883, declaring that the works had been constructed in compliance with the contract, and that they were satisfactory, was estopped from asserting against the trustee of the bondholders and the purchasing committee that the contract had not been complied with. It is fair to assume that those who purchased the bonds did so in good faith, and that they relied, in part at least, on this resolution.

The Water Company, by its trust deed, conveyed no greater right than it had. The mortgage contained a clause which authorized the trustee to receive from the city water rents due to the Water Company, to enable it to pay interest as it accrued on the bonds. But the right of the Water Company to rents depended upon its continued compliance with the contract. The water which it furnished was deficient both in quality and quantity, and it was not, therefore, entitled to rents. The purchasers of the bonds knew that unless water was furnished in quantity and quality as called for by the contract, nothing would be due from the city. A different ruling would be equivalent to holding that by adopting the resolution of December 6th the city guarantied the payment of interest which would thereafter accrue on the bonds. The city did nothing of the kind.

By the trust deed and mortgage, the Farmers' Loan & Trust Company and the bondholders succeeded to the rights of the Water Company. If this were a suit between the city and the Water Company, I should grant the relief prayed for without allowing anything for water furnished, for none was furnished in compliance with the contract. But the controversy now is between the city and the persons representing the bondholders, and I think it equitable that the city should pay them a reasonable compensation for the water, such as it was, which was furnished up to the time it resumed possession of the old mains. I do not think the bondholders' committee is entitled to the old mains. They were not sold to Shelton unconditionally and absolutely. They were sold to him to be used in a particular way, and for a particular purpose, and to be paid for by water furnished under the terms of the contract. Shelton and his successor, the water company, having failed to comply with the contract, although afforded ample time to do so, the city was authorized

to resume possession of its old mains, and protect its inhabitants against fire as best it could.

A reference will be made to the master to ascertain and report the fair value of the water furnished to the city by the Water Company; and when the city shall pay into court, for the bondholders' committee, the amount thus ascertained, a decree will be entered annulling the contract, and establishing the city's title to the old mains.